IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| OVERLAP, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 04-0025-CV-W-SOW |
| ) | |
| CITIGROUP GLOBAL MARKETS, INC., ) | |
| ) | |
| Defendants. ) | |

ORDER

Before the Court are defendant Citigroup Global Markets, Inc.'s Motion for Summary Judgment (Doc. # 68), plaintiff Overlap, Inc.'s Suggestions in Opposition, and defendant's Reply. For the reasons stated below, defendant's motion is denied.

I. Background

Defendant Smith Barney, Inc., n/k/a Citigroup Global Markets, Inc. ("CGMI") moves for summary judgment on plaintiff Overlap, Inc.'s ("Overlap") claims for unfair competition (Count II), copyright infringement (Count III), and trademark infringement (Count IV). CGMI moves for partial summary judgment as to breach of license (Count I). Specifically, Overlap alleges in Count I that its license was breached in two ways: (1) by allowing more than one person to access each licensed copy of the Overlap software; and (2) by disseminating reports generated by Overlap to persons who were not licensed users. CGMI seeks partial summary judgment as to the second of the two allegations and indicates that the first allegation must go to trial. Therefore, this Order will not include any discussion of the issue of whether more than one person was allowed to access each licensed copy of the Overlap software. As both sides agree that claim should be decided by a jury.

The undisputed material facts relevant to the pending summary judgment motion are as follows: In the early 1990s, William Chennault, a Kansas City, Kansas Community College faculty member, created a software program that compares the stock holdings of mutual funds. Apparently, the computer program compares the holdings of separate mutual funds and determines their diversification. The Overlap software was first offered for sale on floppy disks in or around 1993 and has since been sold on CD-roms and offered as a web-based product. The Overlap software license has never been priced at more than $165.00. On or about March 12, 1996, Overlap received a registered trademark in Class 9 for goods and services - mainly database management software - for use in the field of financial and investment analysis. On or about December 18, 2002, Overlap successfully registered its trademark "Overlap" with the State of Missouri.

Kevin Fryer joined Overlap as a CEO in May 2000 and currently holds that position. Initially, the Capital Asset Management ("CAM") branch of defendant CGMI purchased the CD version of the Overlap software in 1998. It is uncontroverted that in June 1998, Overlap was engaged in a discussion with defendant regarding pricing for multiple subscriptions. Overlap informed CGMI (then Smith Barney) that it had a pricing scheme for licensing the software enterprise-wide. In August 1998, Smith Barney was interested in a discount to purchase the Overlap software for all 12,000 of its brokers.

After the September 11, 2001 disaster destroyed CAM's principal offices at 7 World Trade Center, CAM purchased twenty-five licenses of the new web-based product being offered by plaintiff Overlap. All installations of the Overlap software on CGMI computers were genuine Overlap programs.

2

The original license language for the Overlap software provided as follows:

> This version of Overlap is licensed in a single use only environment. To obtain licensing for multiple use environments, including networks and multiple installations, call 1-800-OVERLAP. Do you accept all of the terms of the preceding License Agreement?

Specifically, an individual had to agree to the terms of the license before the software could be used. In approximately August 2001, the Overlap software license was changed. The revised license read, in part:

> You may install and use one copy of the product on a single computer. This copy is to be used by only a single user and will be used to the benefit of said single user. If you wish to use the product for more users you will need an additional license for each user. You may not . . . use the product for the benefit of more than one licensed user.

The Overlap license also provided that a user must reproduce any copyright or other noticed mark on the product on all copies made. Plaintiff asserts that no provision of the license permitted the software or its output to be used for the benefit of persons other than the licensed user. A "user" is not defined in the license agreement or any other Overlap documents.

CGMI Wholesale Desk employees provided sales information and support to CGMI financial consultants. It is uncontroverted that the single version of the Overlap software used on the defendant's CAM Help Desk was shared by members of the Wholesale Desk whose number ranged from 13 to 25 during the relevant period. It is also uncontroverted that in 2000 or 2001, CGMI loaded this single copy of the Overlap software onto the server for the sales help desk. The individuals who worked at the sales help desk used Overlap software to run Overlap reports for defendant's financial advisors. It is clear from the record that Overlap reports were distributed among defendant's financial consultants. These reports that were generated by the Overlap software were often titled "Overlap reports" and indicated that the source of the

3

information was "Overlap, Inc." The sales desk employees had a specific drop-down menu in the call logs for requests for Overlap reports and information.

Overlap analyses/reports were performed by Wholesale Desk employees who operated the program and then transmitted the reports internally to the financial consultants by fax or over the phone. Financial Consultants are brokers who would contact the CAM help desk for useful sales information that could be used to assist an investor client. CAM Sales Desk employees promoted CAM products for sale to investor clients.

It is undisputed that the only version of Overlap registered with the United States Copyright Office is Version 5.0, dated March 13, 2002. CGMI alleges that there is no evidence that anything that was substantially similar to Overlap version 5.0 was used or copied by CGMI, and that Overlap denied as much on the copyright application. Overlap contends that the copyright registration for Overlap version 5.0 contained code for a CD-rom version of Overlap, the form of Overlap software Citigroup used before August 2001. Overlap raised the copyright violation claim that is the subject of this lawsuit in July 2005.

The parties disagree as to the specific meaning of the word "overlap" and whether it is a "generic" term or not. CGMI insists that overlap simply means "to partially extend over," and that the term continues to be used generically in the financial industry. Overlap disagrees of course and contends that after introduction of the Overlap software in 1993, the term "Overlap" acquired a new and distinct meaning and usage in the mutual fund industry.

Mr. Chennault stated in his deposition that "the intent of the license agreement is for a single person to use Overlap on a single computer for that person's benefit. If a help desk person uses Overlap for multiple brokers' benefit, then it violates the license agreement." It is

4

undisputed that the "benefit" language was not placed in the licensing agreement until 2001 in the new web-based license. Mr. Fryer, President and CEO of the company, stated that the intent of the original license and the new, web-based license was the same.

At some point in late 2001, Overlap gained knowledge that defendant was using the Overlap software in violation of the license agreement. On or about November 20, 2001, Overlap sent a cease and desist letter to defendant.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

5

III. Discussion

A. Count I: Breach of License

      As stated above, CGMI seeks partial summary judgment as to Count I. Specifically, defendant seeks summary judgment on plaintiff's claim that its license was breached by defendant when it disseminated reports generated by Overlap. CGMI alleges that there is no evidence that it ever printed or disseminated reports other than as licensed by Overlap, even under Overlap's interpretation of its license. Furthermore, it is CGMI's interpretation of the license that it was permissible for licensed Overlap users to generate Overlap reports and disseminate these reports to unlicensed CGMI brokers. Overlap contends that the license at issue provided that all persons who had access to the software, including all of CGMI's brokers, must be licensed. In this case, numerous CGMI brokers who received Overlap reports were unlicensed.

      The original license on the Overlap software indicated that "this version of Overlap is licensed in a single use only environment." In 2001, this license was revised to read: "you may install and use one copy of the product on a single computer. This copy is to be used by only a single user and will be used to the benefit of said single user. If you wish to use the product for more users you will need an additional license for each user." Overlap argued in its response that it was always Mr. Chennault's intent that he wanted everyone reading the license to understand that it is meant for one person on one computer. Mr. Chennault testified that the intent of the license agreement from the beginning was for a single person to use Overlap on a single computer for that person's benefit. CGMI takes issue with the relevance of Mr. Chennault's

6

"intent" and contends that the drafters intent as to how the license should be interpreted is irrelevant.

The basic issue before the Court discerns is: who is considered a "user" under the license? Overlap alleges that CGMI breached the pre-2001 and 2001 license every time a CGMI broker received an Overlap report or Overlap data from a CAM employee. CGMI argues that summary judgment is appropriate because the brokers who received the Overlap reports in this case were not "users" and the reports generated by the Overlap software were not regulated by the license agreement. It is CGMI's position that the license at issue in this case does not prohibit this activity, and that "quite simply" these brokers did not "use" the software, rather they just received the output from the Overlap software. If the brokers that received the reports were "users" under either version of the license agreement, then that broker would have to have purchase his or her own individual Overlap software license to receive reports.

Overlap disagrees with defendant's assertion that the brokers were not "users." Plaintiff argues that Mr. Chennault, the inventor of Overlap and author of the first license, intended "single use" to prohibit dissemination of the information or reports extracted from the program. Furthermore, Overlap relies on conversations Mr. Fryer had with representatives of CGMI. In these conversations, Mr. Fryer allegedly told representatives of CGMI that in order to disseminate reports, the recipient of the reports needed to be licensed. CGMI takes issue with the relevance of these two assertions by Overlap and argues that uncommunicated intent can never form the basis of a contract and that oral evidence to contradict or change the terms as written is prohibited. Mal Spinrad of St. Louis, Inc. v. Karman, Inc., 690 S.W.2d 460, 463 (Mo. App. 1985); Pacific Carlton Dev., Inc. v. Barber, 98 S.W.3d 32 159, 165 (Mo. App. 2003).

7

CGMI contends that the interpretation of the words "user" and "use" is a question of law for the court to determine. "Whether a contract is ambiguous is a question of law." Young Dental Mfg. v. Engineered Products, Inc., 838 S.W.2d 154, 155 (Mo. App. 1992). The Young case involved a contract dispute where the parties disagreed about the meaning of the contractual term "scrapped." Id. If the contract is ambiguous, the ambiguity must be resolved by a jury. Id. In Young, plaintiff could not show that the term "scrapped" had more than one reasonable meaning and therefore the Court found that the term was unambiguous. Id. at 158.

In this case, the Court finds that the terms "user" and "use," within the context of this license agreement, are ambiguous and their meaning must be resolved by a jury. CGMI has presented to the Court evidence that Overlap's own expert, Jeffrey Van Myers, represented to CGMI in his deposition that it was free to disseminate Overlap reports to unlicensed individuals. Overlap strongly disagrees, asserting that Mr. Myers' words were taken out of context. All of this extrinsic evidence may be presented to a jury in order to determine the meaning of the Overlap licenses. After a contract is determined to be ambiguous, extrinsic evidence may be admissible to resolve that ambiguity. Young, 838 S.W.2d at 157. "In a case where the parties disagree as to the meaning and effect of the contract, and parol evidence is required, a motion for summary judgment based on interpretation of the contract should be denied." MECO Sys., Inc. v. Dancing Bear Entm't, Inc., 948 S.W.2d 185, 191 (Mo. App. 1997). Therefore, defendant's motion for summary judgment on plaintiff's claim that its license was breached by defendant when it disseminated reports generated by Overlap is denied.

8

Case 4:04-cv-00025-SOW   Document 77   Filed 02/28/06   Page 8 of 14

B. Count II & IV: Unfair Competition & Trademark Infringement

The Court will address both the unfair competition and trademark infringement claims together. Defendant's brief states that Overlap's trademark claim must fail for the same reason it has no unfair competition claim, and plaintiff's responses to both counts are identical. "[T]he same facts which support a suit for trademark infringement support a suit for unfair competition." Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 758 F. Supp. 512, 527 (E.D. Mo. 1991).

Defendant seeks summary judgment on plaintiff's claim that CGMI's alleged use of non-genuine Overlap reports constituted unfair competition under Rev. Stat. Mo. § 417.056 and diluted the marks. Specifically, CGMI argues that the Overlap reports defendant provided to its unlicensed brokers were genuine Overlap reports and that Overlap's trademark is generic and not distinctive. Overlap responds that CGMI has no evidence that before Mr. Chennault invented the Overlap software, the word "overlap" had any specific meaning in the financial industry.

At the outset, it is important to determine whether the term "overlap" is capable of receiving trademark protection. It is only after this determination is made that the Court can go on to the next step in determining whether a trademark infringement occurred. In determining whether a work is capable of trademark protection, the Court must first determine in which of four categories the term falls: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. WSM, Inc. v. Hilton, 724 F.2d 1320, 1325 (8th Cir. 1984). The categorization of a particular term is an issue of fact. Id. at 1326.

Defendant CGMI argues that the word "overlap" is a generic term and is broadly used in

9

the English language. CGMI maintains that a word this generic is not afforded trademark protection. See Best Buy Warehouse v. Best Buy Co., Inc., 920 F.2d 536 (8th Cir. 1990). Whether a term is generic is determined by actual common usage. WSM, Inc., 724 F.2d at 1327. If this Court determines that "overlap" is generic, then it must grant summary judgment on these Counts because the term would not be afforded trademark protection.

Overlap argues that the term "overlap" is suggestive or even descriptive and is therefore entitled to broad protection. Suggestive marks are "entitled to broad trademark protection without establishing secondary meaning." General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987).

Both Mr. Chennault and Mr. Myers testified that the term "overlap" was suggestive of the analysis performed by the proprietary algorithm that Mr. Chennault created. Regardless, the Court finds that evidence has been put forth by Overlap that creates a genuine issue of material fact as to whether the term "overlap" is generic or not. For instance, Overlap argues that if defendant were correct that the word "overlap" is generic, a listener would need to understand automatically that the mark not only refers to a software program, but to a software program used by financial analysts to help diversify their clients' portfolios.

Next, the Court must examine whether there is any genuine issue of material fact as to whether trademark infringement occurred. CGMI argues that even if "overlap" is afforded trademark protection, summary judgment is still appropriate because there was no confusion as to the source of Overlap reports. The Missouri Unfair Competition Act parallels the federal trademark statute in that it requires plaintiff to prove that the alleged offending use "is likely to cause confusion or mistake or to deceive as to the source or origin of such goods or services."

10

Mo. Rev. Stat. § 417.056. Specifically, CGMI asserts that plaintiff has no evidence that CGMI sent anyone a report which purported to be an Overlap report which was not, in fact, an Overlap report and that all Overlap reports indicated that the source of the information for the report was Overlap, Inc. Accordingly, since only genuine Overlap reports are at issue in this case, there can be no confusion.

The Court finds that Overlap has come forth with sufficient evidence to create a genuine issue of material fact as to whether CGMI's use of the trademark created a likelihood of confusion. Specifically, there is some evidence that when requests for Overlap reports were made to defendant, it provided reports generated by Morningstar software rather than Overlap. The Court has noted defendant's argument that the specific Overlap reports that were generated were always credited with the "Overlap" trademark (even if a Morningstar report was requested) and that therefore there could have been no confusion as to the origin of Overlap's products or services or affiliation. But the Court finds that there is a possibility of confusion in this instance. Overlap as the non-moving party has met their burden and come forward with facts showing that there is a genuine issue of material fact for trial. Therefore, defendant's motion for summary judgment on plaintiff's unfair competition and trademark infringement claims is denied.

C. Count III: Copyright Infringement

Finally, CGMI seeks summary judgment on plaintiff's copyright claim because the claim is time-barred. Specifically, defendant argues that federal copyright statutes establish that a civil action must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Defendant asserts that it stopped using the Overlap software in November 2001 and Overlap did not file its copyright claim until July 2005, beyond the three year time limitation. Further, even if

plaintiff's copyright claim is found not to be time barred, CGMI argues that summary judgment is still appropriate because plaintiff cannot show the basic elements of copyright infringement.

### a. Plaintiff's claim is not time-barred

CGMI argues that plaintiff's claim is untimely because it stopped using Overlap software in November 2001 and Overlap did not file its copyright claim until July 2005. Yet, plaintiff has come forward with evidence, namely correspondence between a CGMI employee and Overlap on June 20, 2005, indicating that the CGMI employee used the Overlap software, and had continuously used the Overlap software for the entire past year. This is enough for plaintiff to survive summary judgment on defendant's argument that plaintiff's copyright claim is time-barred.

### b. Copyright claim

The crux of defendant CGMI's argument is that plaintiff only registered version 5.0 of its software with the United States Copyright Office on March 13, 2002, after CGMI ceased using the Overlap software. CGMI alleges that it ceased using the Overlap software in November 2001 before any version of Overlap software was copyrighted. CGMI argues that the Certificate of Registration for version 5.0, indicated by its silence that version 5.0 is not based on any preexisting works or works. The authority for such an argument is not indicated.

17 U.S.C. § 501 requires that a plaintiff in a copyright infringement action show that a substantial copy of the registered work was used by the defendant. To establish copyright infringement plaintiff must prove: (1) ownership of valid copyright; and (2) copying of constituent elements of the work that are original. <u>Fiest Publishing v. Rural Telephone Serv.</u>, 499 U.S. 340, 360 (1991). Copyright registration is a prerequisite to a valid claim of copyright

12

infringement.  Olan Mills v. Linn Photo Co., 23 F.3d 1345, 1349 (8th Cir. 1994).

What CGMI fails to recognize is that Overlap has presented evidence, including testimony of Mr. Myers, that CGMI used both the CD version (pre-9/11) and the web-based versions (post-9/11) of the Overlap software.  Based on Mr. Myer's review of the of the software code registered in 2002 with the copyright office, the registration was consistent with the CD version of the software (or a "substantial copy"), which CGMI heavily used.  Apparently plaintiff is arguing that the same computer "code" that CGMI used prior to 2002 was included in the version 5.0, and that the copyright registration is based on Overlap's preexisting works that were used by defendant prior to its registration.  Regardless, Overlap has come forth with evidence to indicate that defendant CGMI was using the Overlap software into the year 2005 (post-registration).  Defendant argues that what remains missing from the evidence that Overlap has produced is any proof that any computer owned or controlled by CGMI, or any of CGMI's employees or agents, contained software with the content of version 5.0 (the registered version), or any proof that anyone copied any version of 5.0.  Of course if Overlap failed to provide *some* proof concerning all elements of a copyright claim, then summary judgment would be appropriate, but that is not the case here.  Therefore, defendant's motion for summary judgment on plaintiff's copyright claim is denied.

### IV.  Conclusion

For the reasons stated above, it is hereby

ORDERED that defendant Citigroup Global Markets, Inc.'s Motion for Summary

13

Judgment (Doc. # 68) is denied.  This case will proceed to trial on the April docket.

                                                    /s/Scott O. Wright  
                                                    SCOTT O. WRIGHT  
                                                    Senior United States District Judge

Dated: 2-28-06